UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| ELON WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *v.* | ) Case#1:21-cv-800 |
| | ) |
| FAIRFAX COUNTY, and | ) |
| JONATHAN FREITAG, and | ) |
| JONATHAN NYTES, | ) |
| | ) |
| and | ) |
| | ) |
| TODD BILLEB, and | ) |
| SGT. CHANDLER, and | ) |
| SEC. LT. BERKEY, and | ) |
| Fairfax Police Department | ) |
| 12099 Government Center Parkway | ) |
| Fairfax, VA 22035 | ) |
| | ) |
| and | ) |
| | ) |
| DAVID M. ROHRER | ) |
| Office of the County Executive | ) |
| 12000 Government Center Parkway | ) |
| Fairfax, VA 22035 | ) |
| | ) |
| Defendants. | ) |

AMENDED COMPLAINT[1]

Preliminary and Jurisdictional Statement

1.  Plaintiff Elon Wilson, a former District of Columbia firefighter, was arrested by former

Fairfax police officer Jonathan Freitag for allegedly driving across a yellow line and having

---

[1]This amended complaint adds defendants Billeb, Chandler, Berkey, and Rohrer and makes a small number of factual corrections or clarifications.

unlawfully tinted windows in his car.   Officer Freitag then searched and found contraband in his car.  Although the contraband – drugs and a gun – was not his, rather than risk a prison sentence of 45 years he entered an Alford plea pursuant to which he served almost two years in jail.  His sentence was then vacated by the Fairfax Circuit Court on an express finding that his conviction had been obtained by fraud –a fraud that turns out to have reflected a custom, practice, or usage of the Fairfax County Police Department of tolerating racially motivated pretextual stops and subsequent deceit for the purpose of securing convictions for alleged criminal conduct based on after-acquired alleged evidence of crime.  The Fairfax Commonwealth's Attorney's Office subsequently began a review of some 400 convictions feared to have been procured by such fraudulent activity.  Mr. Wilson now sues former Officer Freitag, other officers and supervisors complicit in his misconduct or deliberately indifferent to its adverse consequences for him, and Fairfax County in whose name the custom, practice and usage of such pretextual stops was openly and notoriously accomplished notwithstanding ostensible policies to the contrary.  Mr. Wilson sues on his own behalf, and on behalf of a class of persons similarly victimized.  This case arises under the Fourth and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §§1983, 1985(3), and 1986.  This court has jurisdiction under 28 U.S.C. §1331.

<u>Parties</u>

2.  Plaintiff Elon Wilson is a twenty-six year old resident of the District of Columbia.  At the time of his arrest he was a D. C. firefighter in good standing.   He is African American.

3.  Defendant Jonathan Freitag is a former Fairfax County police officer.  He is white.  He is sued in his individual capacity.

4.   Defendant Jonathan Nytes is and was at all relevant times a sergeant in the Fairfax County Police Department ("FCPD").  At all relevant times, Sergeant Nytes supervised Officer Freitag and approved his pretextual stops.  He is white.  He is sued in his individual capacity.

5.   Defendants Sgt. [F.N.U.] Chandler and Sec. Lt. [F.N.U.] Berkey were at all relevant times police officers assigned, on information and belief, to investigate allegations police misconduct, including allegations of mendacity regarding traffic stops, first made against Officer Freitag in or around July 2018.  It was their role and responsibility to conduct reasonably prompt and efficient investigations of alleged wrongdoing by county police officers, including Officer Freitag, and to report their findings in timely fashion up the chain of command to defendant Billeb, Commander of the Internal Affairs Bureau ("I.A.").

6.   Defendant Todd Billeb was at all relevant times the Commander of the Investigative Division of the FCPD Internal Affairs Bureau ("I.A.").  It was his role and responsibility to see that alleged misconduct by county police officers was properly and promptly investigated, and to make appropriate recommendations in timely manner to the Chief or Interim Chief of Police in an effort to rectify the consequences of  wrongdoing found to have occurred, including acting to facilitate the potential exoneration of persons, including Mr. Wilson, found to have been charged or convicted of crime as a result of officer mendacity or other wrongdoing.[2]

---

[2]Mr. Wilson has not been able to learn as a result of pre-filing inquiry whether defendants Billeb and Rohrer were both apprised of Officer Freitag's mendacity before Mr. Wilson was remanded to the custody of the Virginia Department of Corrections in November 2019.  On information and belief, given the notorious nature of Officer Freitag's offenses first reported in July 2019, they were.  If discovery reveals that either or both were not so apprised, or that they acted appropriately upon being so apprised, such defendant or defendants will be dismissed voluntarily.  They are named as defendants in light of the imminent expiration of the statutory period of limitations applicable to the claims against them.

7.  Defendant David M. Rohrer was at all relevant times Interim Chief of Police of Fairfax County.  He is now Deputy County Executive.  As Interim Chief, Chief Rohrer was responsible for running FCPD in accordance with applicable law and the United States Constitution.  His responsibilities included promulgating policies and procedures intended to prevent persons, including Elon Wilson, from being charged or convicted of crimes based on perjury and other wrongdoing by members of his police department, and if apprised of same, to take effective action, directly or via his subordinates, to remedy the consequences thereof.[3]

8.  Defendant Fairfax County is a political subdivision created and operating under the constitution and laws of the Commonwealth of Virginia.  Its police department, FCPD, acts as its agent on all matters touching law enforcement in the County.

<u>Claim for Relief</u>

9.  On April 3, 2018, Mr. Wilson, having picked up his cousin, was lawfully driving home when then-Officer Freitag stopped his car on the pretext that his car had unlawfully crossed over the yellow line in the street and had illegally tinted windows.

10.  In fact, Mr. Wilson never crossed the yellow line, and the window tint, which Officer Freitag never tested, was not illegal.

11.  Following the stop, Officer Freitag searched Mr. Wilson's vehicle, found drugs and a gun in the glove box, and arrested Mr. Wilson for wrongful possession thereof.  He also arrested Mr. Wilson's cousin, who owned these items and had placed them in the glove box.

---

[3]*See* note 2 at 3, *supra.*

12.   Officer Freitag stated in his police report that Mr. Wilson's car drove over the solid yellow line and had illegally tinted windows, thus justifying his traffic stop.  Later on April 3, 2018, he went before a magistrate to whom he presumably presented the same information.  He thereupon obtained felony warrants against Mr. Wilson for possession of a controlled substance with intent to distribute and  possession of a firearm while engaged in same.

13.  Officer Freitag's representations on the basis of which Mr. Wilson was stopped, arrested and thereafter prosecuted were false.  Officer Freitag made these representations in derogation of his obligations to uphold the law, and in so doing exceeded the bounds of his authority and acted outside the scope of his responsibilities as a police officer.  On information and belief, he sought, by doing so, to enhance his personal reputation and eventual promotability as an accomplished police officer ever vigilant to arrest criminals.

14.  Mr. Wilson was prosecuted based on Officer Freitag's misrepresentations in his police reports, to the magistrate, and to prosecutors regarding his allegedly lawful traffic stop.

15.  Mr. Wilson, by counsel, moved to suppress the seized evidence on the ground that they were the fruit of an unlawful stop and search.

16.  The adjudication of Mr. Wilson's motion to suppress was delayed by reason of Police Department administrative proceedings regarding Officer Freitag that impacted his ability to testify freely.

17.  In the meanwhile, Mr. Wilson passed a polygraph examination administered by Darryl Dubow, one of the most prominent polygraphers in the state, on his possession of the contraband allegedly justifying his arrest.

18.  In due course, the prosecutor engaged Mr. Wilson in plea negotiations.

19.   Notwithstanding that he was innocent of the charges against him, but faced with a possible 45 year sentence,  Mr. Wilson saw fit to accept an Alford plea in exchange for agreement to an anticipated dramatically reduced potential sentence.  The reasons for such decisions, exemplified by this case, are analyzed, among others, by United States District Judge Jed Rakoff in his book *Why the Innocent Plead Guilty and the Guilty Go Free* (2021); *see also* https://constitutioncenter.org/interactive-constitution/podcast/why-do-the-innocent-plead-guilty, as well as noted by Circuit Judge Daniel Ortiz in his order releasing Mr. Wilson from custody in April 2021.  Exhibit 1 at 6.

20.   As part of the plea agreement, Mr. Wilson did not present his motion to suppress evidence and waived a preliminary hearing at which time Officer Freitag would have been examined under oath on his stop.

21.   Mr. Wilson entered his Alford plea on April 17, 2019.  On July 12, 2019, the circuit court sentenced him to seven years of incarceration, three years and eleven months of which were suspended.  He was transferred into the custody of the Fairfax Adult Detention Center pending being remanded to the custody of the Virginia Department of Corrections.

22.   Following currently unknown third-party complaints about Officer Freitag, in July 2019 I.A. opened an investigation into his traffic stops.  As part of that investigation, I.A. reviewed dash-cam footage from his police car and police reports from those stops.

23. On September 6, 2019, I.A. investigators, including on information and belief defendants Chandler and Berkey, interviewed Officer Freitag regarding his apparent untruthfulness in reporting his traffic stops, concluding, among other things, that he had engaged in racial profiling and lied in his arrest reports.  The following day he was relieved of active duty.

24.  On information and belief, by September 12, 2019 defendant Billeb was aware of the investigation of Officer Freitag, his relief from active duty, and that his investigators had concluded or were in the process of concluding that Officer Freitag routinely lied about his traffic stops, engaged in pretext stops, engaged in racial profiling, and otherwise violated written policies and statutory and constitutional law.

25.  On information and belief, by or promptly after September 12, 2019 Interim Chief Rohrer became aware of the investigation of Officer Freitag, his relief from active duty, and that his investigators had concluded or were in the process of concluding that Officer Freitag routinely lied about his traffic stops, engaged in pretext stops, engaged in racial profiling, and otherwise violated written policies and statutory and constitutional law.

26.  As of the time defendants Billeb and Rohrer learned of Officer Freitag's mendacity, each knew and understood it was imperative promptly to identify each conviction based on Officer Freitag's testimony, now believed to be mendacious, so that this information might be promptly relayed to the Commonwealth's Attorney's Office and defense counsel.  Were that done, appropriate ameliorative action could then be promptly taken, particularly relative to all cases remaining within the jurisdiction of the Fairfax Circuit Court where prompt relief might be obtained.  Nothing of the sort occurred, however.

27.  On information and belief, neither defendant Billeb nor defendant Rohrer directed that Officer Freitag  – who remained employed  – be promptly interrogated relative to all his cases still  within the Fairfax Court's jurisdiction, including Mr. Wilson's.  Nor did defendants Chandler and Berkey undertake to do so.  It was only after Mr. Wilson's lawyer  – having received vague, non-specific information about Officer Freitag's alleged mendacity  –  filed, in

February, 2020, a motion in Circuit Court seeking disclosure of any information that might bear

on Mr. Wilson's conviction, that Officer Freitag was questioned, on March 25, 2020, by

defendants Chandler and Berkey about Mr. Wilson's case.  At that time, Officer Freitag admitted

to mendacity and a pretextual stop.  By that time, however, Mr. Wilson had been transferred to

state custody, where he remained for seventeen months while his lawyer sought his release.

28.   Although defendants Chandler and Berkey were aware of the concerns giving rise to

their March 25, 2020 interrogation Officer Freitag, Officer Chandler told Officer Freitag: "Okay,

the Police Department, we're supporting you."

29.   In his I.A. interview, Officer Freitag admitted to having engaged in pretextual traffic

stops and falsified information in his police reports.  He confirmed as well that this practice,

custom or usage of pretextual stops was not unique to him.  He testified, among other things, as

follows:

| | |
|---|---|
| Chandler: | This is a pretextual stop, let's make it clear. |
| Freitag: | Yeah, 100% |
| Chandler: | You don't admit to that in the report. |
| Freitag: | Yeah, I don't admit to that in any of my reports. I was told not to. |
| | *** |
| Freitag: | Just like if I see a car doing something shady in front of a house or something, I'm going to find a reason to pull them over. So I put in my report, I observed this vehicle make this traffic violation, pulled over for this reason. |
| | *** |

Freitag:        Like, I thought, there's certain things you don't put in a report. For certain reasons.

                ***

Freitag:        Well then that's my mistake and that was my supervisors who were, I thought I was doing the right thing for multiple years. They never once told me anything other.

Chandler:       So you weren't being truthful in your reports?

Freitag:        How is that not being truthful? I had a legitimate reason to stop that vehicle I put in my report why I stopped that vehicle.

Chandler:       But it's a pretextual stop.

Freitag:        Then I should have put that I conducted a pretextual stop on this vehicle for this reason, which I've never done for any of my reports. Just like I know multiple other officers who don't.

Chandler:       And you've told the Commonwealth on every single case that you've done pretextual, the full story of the case?

Freitag:        Not every single case. Unless they ask, I tell them I pulled them over for this reason. I didn't know how to say, "oh this was a pretextual stop," because if that was the case then like every one of my stops, most of them, were pretextual stops.

                ***

Freitag:        Yeah, like I said, my supervisor never said anything about it. I told Sergeant Nytes my cases before, he's approved my reports. I never

-9-

thought I had to put "ah, this is a pretextual stop."

Available at: https://www.youtube.com/watch?v=kr6AdquXuvI.

30.  Officer Freitag's testimony confirmed that he was acting pursuant to a Fairfax County Police Department custom, practice, or usage of making pretextual stops for the purpose of making arrests based on after-acquired evidence of crime.  His testimony also confirmed that defendant Sgt. Nytes, his supervisor, was aware of this and approved it.

31.  Sgt. Nytes' knowing support of Officer Freitag's pretextual stops and prosecutions based thereon were in derogation of his obligations to uphold the law.  On information and belief, he sought, by doing so, to enhance his personal reputation and eventual promotability as mentor to an accomplished police officer ever vigilant to arrest criminals.

32.  Notwithstanding that the Police Department became aware of Officer Freitag's pattern  misconduct in September 2019, no police or other County official took any action to address Mr. Wilson's wrongful conviction.  No police or other County official informed his defense counsel that Officer Freitag's actions undermined Mr. Wilson's conviction.

33.  In November 2019, Mr. Wilson was transferred to state custody.  Had he received information regarding Officer Freitag's misconduct prior to being so transferred, he could have invoked the sentencing court's jurisdiction to obtain a swift release.  Having left the jurisdiction of the Fairfax Circuit Court, Mr. Wilson remained imprisoned within the state prison system for an additional seventeen months.

34.  On December 10, 2019, Mr. Wilson's defense counsel learned, from the outgoing prosecution team, that unspecified issues had arisen regarding Officer Freitag's truthfulness.  The prosecutor's office provided no information regarding Mr. Wilson's encounter with Officer

-10-

Freitag, however.  Mr. Wilson's counsel attempted to secure further information from the Commonwealth's Attorney's Office so as to be in a position responsibly to file, if possible, an appropriate petition with the Circuit Court seeking relief for his client.  No further information was forthcoming, however, from the outgoing prosecution team.

35.  Virginia Commonwealth's Attorneys are constitutional officers independent of the counties or cities they serve.  A new Fairfax Commonwealth's Attorney took office in early 2020, following which  Mr. Wilson's counsel filed a Motion for Disclosure with the Fairfax Circuit Court in order to learn whether, and if so how, Officer Freitag's misconduct might bear on Mr. Wilson's conviction.

36.  The new Commonwealth's Attorney supported did not oppose Mr. Wilson's motion, but advised the court that certain procedural steps had to be followed to secure Officer Freitag's right not be incriminated by statements he may have made during his compelled I.A. testimony. Following resolution of these matters after considerable delay and following the requested disclosure by FCPS, the Commonwealth's Attorney advised the Court that:

> In each . . . of . . . 40 randomly selected cases, the basis used by [Freitag] to justify the stop, as memorialized in his police report, was untruthful. Moreover, there was a racial component with respect to the drivers that [Freitag] unlawfully stopped.

The Commonwealth Attorney's Office specified that:

- [Officer Freitag] systematically stopped motorists without a valid legal basis and then fabricated the basis for the stops in his reports;

- [Officer Freitag] admitted to falsifying information in police records;

- Multiple people accused [Officer Freitag] of planting drugs;

- In several cases handled by [Officer Freitag], narcotics went missing from the property room, including cocaine and marijuana;

- [Officer Freitag] repeatedly edited police reports in cases where the narcotics went missing, sometimes over 100 times in a single case;

- [Officer Freitag] threatened people with the authority vested in him as a law enforcement officer in an improper manner; and

- [Officer Freitag] abused his authority as a law enforcement officer on several occasions to avoid criminal liability unrelated to the performance of his duties.

Exhibit 2 at 5, 6.

29.  The Commonwealth's Attorney's Office also reported that Officer Freitag had admitted to engaging in racial profiling in determining which motorists to stop, and that evidence existed to corroborate this admission.  Mr. Wilson's stop was of this sort.

30.  Ultimately labeling Mr. Wilson a "victim of a racially biased and complacent status quo that valued convictions over justice," the Fairfax Commonwealth's Attorney styled Mr. Wilson's pretextual arrest and its aftermath as "indicative of a destructive culture that characterized our criminal justice system for too long,"  Exhibit 3.  The Commonwealth Attorney's office began a systemic review of over 400 of Officer Freitag's cases.


The County Cover-Up

31.  On May 9, 2020, Fairfax County allowed Officer Freitag voluntarily to resign his employment on the basis of an agreement between himself and the County that kept all negative information about him out of his personnel file and from third parties, including potential law enforcement employers.  This sweeping of Officer Freitag's misconduct under the rug reflected a County and Police Department custom, practice or usage of whitewashing known police misbehavior and protecting even officers facing discharge for cause.

-12-

32.   The County's Human Resources Department provided Officer Freitag with a letter to serve as "verification of your previous employment with Fairfax County Government."  The letter falsely stated: "You resigned from the position in good standing, your employment was entirely favorable, and you are eligible for re-hire."  Quoted in Exhibit 4, at 1.

33.   The County's representations on Officer Freitag's letter of reference were not only false but reckless, in that they were intended to be, and were, used to help Officer Freitag secure another position in law enforcement. Armed with the County's whitewashing letter, Officer Freitag applied for a position with the Brevard County, Florida, Sheriff's Office.

34.   The Brevard County Sheriff's Office thereafter made additional inquiries of the Fairfax County Human Resources Department.  A departmental representative supplied the Sheriff's Office with confirmation on behalf of the County that "Mr. Freitag's overall work performance was rated as 'Good,' he was eligible for re-employment, there was no reason why the applicant should not work for the [Brevard] Sheriff's Office, and there were no reservations about the quality of police protection or services he would provide."  Exhibit 4, at 1.  These representations were false.

35.   Defendant Sgt. Nytes thereafter provided the Brevard Sheriff's Office with a personal reference for Officer Freitag, based on his status as Freitag's supervisor.  Like the County's Human Resources Department, Sgt. Nytes "provided a favorable recommendation of Mr. Freitag and did not indicate any circumstance which might disqualify Mr. Freitag from public service." Exhibit 4, at 1-2.  Sgt. Nytes' representations were false, made in derogation of his obligations to uphold the law, and exceeded the bounds of his authority and the scope of his responsibilities as a police officer.  On information and belief, Sgt. Nytes sought, by recommending Officer Freitag, to

avoid damage to his own personal reputation and eventual promotability, by getting Officer Freitag, with his unconstitutional baggage, safely out of the way in Florida.

36.  The Brevard officials made "multiple attempts" to secure additional information about Officer Freitag, speaking with FCPD personnel on "multiple occasions" about requested records.  These attempts were unsuccessful.  Exhibit 4, at 2.

37.  In due course, the Brevard Sheriff's Office learned the truth from a *Washington Post* reporter who contacted the office, and promptly fired Officer Freitag.  The Sheriff thereafter castigated FCPD for providing "misleading representations to our legitimate efforts to investigate [Officer Freitag's] eligibility for employment."   The Brevard Sheriff wrote: "It is outrageous that an individual such as Mr. Freitag, with a history of alleged misconduct at the Fairfax County Police Department, had become a member of our agency...."  Exh. 4, at 2.

38.  The testimony of Officer Freitag quoted above implicated not merely himself but other police officers, trainers and supervisors, currently unknown other than Sgt. Nytes, in open and notorious ongoing unconstitutional activity within FCPD.  Officer Freitag also received support, both before-the-fact and after-the-fact, from (at least) his supervisor Sgt. Nytes, and from the cover-up of his wrongdoing by a host of County officials.  This widespread, persistent pattern of unconstitutional misconduct by Fairfax County employees amounts to a County practice, custom or usage of encouraging or at the minimum tolerating unconstitutional police stops, thereby leading to the victimization of Mr. Wilson and others similarly situated.[4]

---

[4]At this writing, it is unknown whether, when, and the extent to which Sgt. Nytes or other police officers were disciplined for the misconduct here at issue.  This will emerge in discovery.

-14-

Mr. Wilson is Exonerated

39.   After lengthy delays occasioned by the consequences of the Covid-19 epidemic for the conduct of judicial business, the requirements of the Fairfax Circuit Court relative to Officer Freitag's right to be secured from self-incrimination for his I.A. statements, and Mr. Wilson's counsel's ongoing, and ultimately successful, efforts to secure agreement by the Commonwealth's Attorney's Office, on March 3, 2021 Mr. Wilson, by counsel, filed a Petition to Vacate Judgement based on the information obtained about Officer Freitag's conduct.

40.   The newly elected Fairfax County Commonwealth's Attorney supported Mr. Wilson's petition, publicly stating:  "The bottom line is that Mr. Wilson was a victim of a racially biased and complacent status quo that valued convictions over justice."   Exhibit 3.

41.   On April 20, 2021, the Fairfax County Circuit Court, per Ortiz, J., vacated Mr. Wilson's conviction, finding from his examination of "the alarming chain of events" at issue that a fraud had been perpetrated on the court.  Judge Ortiz wrote:

> Freitag's fabricated grounds for the stop, police report, and warrant made under oath fundamentally tampered with the judicial machinery and subverted the integrity of the court itself.  Freitag's misrepresentations tainted every part of the judicial mechanism, from the charges against Wilson, to the magistrate's probable cause determination, to the Commonwealth's plea bargaining tactics.  His false grounds for stopping Wilson contravened a key aspect of the federal Constitution, from which all states derive their power and legitimacy.  Freitag's actions betrayed the public's trust in its institutions and the court.

Exhibit 1 at 6.

42.   It is foundational and long-settled that the "presentation of known false evidence is incompatible with rudimentary demands of justice." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).  No reasonably trained police officer, including Officer Freitag, could reasonably have

believed it was constitutionally permissible to arrest Mr. Wilson and cause him to be prosecuted on the basis of fabricated claims and racial bias.  No reasonably trained police supervisor, including Sgt. Nytes, could reasonably have believed the same, or believed that it was permissible to excuse or tolerate such misbehavior by officers reporting to them.  And no reasonably trained County employees could reasonably have believed that it was constitutionally permissible to ignore, not to say whitewash, serious police wrongdoing and knowingly permit the truth to be suppressed and misrepresentations to be made to future police employers in other jurisdictions about a disgraced former officer.  The fact that these things happened both manifested and contributed to a police custom practice or usage that tolerated and thus led to the wrongful arrest, prosecution and incarceration of Mr. Wilson and possibly hundreds of others.

43.  On April 21, 2021, Mr. Wilson was released from prison by order of Judge Ortiz.  He had served almost two years for a crime he did not commit, based on a conviction obtained by fraud.

44.  Mr. Wilson suffered grievous losses as a result of defendants' actions, including, among others, almost two years of wrongful incarceration, lost time with his family including an infant child, loss of employment as a D.C. firefighter, massive reputational harm, severe emotional distress, and past, present and future economic harm.[5]

Limitations Issues

45.  The limitations period for claims under 42 U.S.C. §§1983, 1985 and 1986 is

---

[5]Mr. Wilson also notes the harm done to honest law enforcement personnel and to the public by the misconduct here at issue.  This, however, is a matter for FCPD to fix, not him.

determined by the most analogous state law, including applicable tolling provisions under state law.  Pursuant to the provisions of *Va. Code* §8.01-229(K), the period of limitations for Mr. Wilson's instant claims was tolled during the pendency of the criminal proceedings against him "from the date of the issuance of a warrant . . . until . . .  the date of the final disposition of any direct appeal in state court, or the date on which the time for noting an appeal has expired, whichever date occurs last."  Mr. Wilson was arrested on April 3, 2018 and served with an arrest warrant later that day.  He entered his *Alford* plea on April 17, 2019,  was sentenced on July 12, 2019, and his time to note an appeal expired August 11, 2019.  The statutory period of limitations on his claims  – two years given Virginia law – was tolled from April 3, 2018 through August 12, 2019.  Tolling included, this lawsuit is filed within two years following the date of Mr. Wilson's sentencing.

## Class Action Allegations

46.  Mr. Wilson brings this lawsuit on his own behalf and also for damages pursuant to Fed. R. Civ. P.  23(b)(2) and (b)(3), on behalf of a class of persons within the following parameters, from the hundreds of cases being reviewed by the Fairfax Commonwealth's Attorney's Office noted above:

* Persons arrested by FCPD officers following stops found by the Fairfax Commonwealth's Attorney's Office to have been racially motivated pretextual stops lacking reasonable suspicion or probable cause, *and*

* Who have been released by court order from any form of custody, with the concurrence of the Commonwealth's Attorney's Office, or who have petitioned for

same with the concurrence of the Commonwealth's Attorney's Office, by reason

of the same sort of fraud on the Court as gave rise to the release of Mr. Wilson,

*and*

\*      Whose individual claims for wrongful arrest would be timely if filed by the day

this lawsuit is filed.

47.  The size of the proposed class is currently unknown, but is believed to be in the

dozens or scores.  According to the WASHINGTON POST, the Commonwealth's Attorney's Office

is contemplating seeking dismissal of 400 cases by reason of fraud on the court.   Joinder of all

class members will be impracticable.[6]

48.  There are questions of law and fact common to the class members, *i.e.,* that their

convictions have been or can be expected to be vacated by judicial order on ground that the stops

giving rise to the charges against them were pretextual.

49.  The claim of Mr. Wilson – that he was arrested based on racially motivated,

pretextual grounds – is identical, by definition, to the claims of the class members, whose stops

must have been found to have been pretextual in order to qualify as class members.

50.  The representative parties will fully and fairly protect the interests of the class

members.  Class counsel include an experienced federal civil rights litigator and an experienced

criminal defense lawyer, both with extensive experience in this court.

---

[6]Mr. Wilson will seek expedited discovery of FCPD and the Commonwealth's Attorney's Office to establish the size of the class.  If an insufficient number of class members is identified by the time class certification should occur, no motion for class certification will be filed.

Causes of Action

Count I

Defendant Freitag: Unreasonable Seizure

51.  By stopping Mr. Wilson without reasonable suspicion that he had committed a crime or was engaged in criminal activity, Officer Freitag unreasonably seized Mr. Wilson in violation of his Fourth Amendment rights.

Count II

Defendant Freitag: Denial of Due Process via Fabricated Evidence

52.  By fabricating evidence that Mr. Wilson had committed traffic violations, when he did not, and by withholding this exculpatory information from him, Officer Freitag violated Mr. Wilson's due process rights that were clearly established in *Brady v. United States*, 397 U.S. 742 (1970), and *United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013), thereby depriving him of the right to a fair trial.

Count III

Defendant Freitag: Denial of Equal Protection

53.  By racially profiling and stopping Mr. Wilson without lawful justification, Officer Freitag engaged in racial discrimination in violation of the Fourteenth Amendment.

Count IV

Defendants Freitag and Nytes: Violation of 42 U.S.C. §1985(3)

54.  As attested to by Officer Freitag and found by the Commonwealth's Attorney to be

supported by evidence, Officer Freitag engaged in racial profiling in determining which motorists to stop on a pretextual basis.  He did this, on his own account, with the knowledge and support of, at least, his supervisor, defendant Nytes.  In so acting in concert to cause and justify unwarranted stops based on racial profiling, defendants Freitag and Nytes acted in derogation of their obligation to uphold the law, and in so doing exceeded the bounds of their authority and the scope of their responsibilities as police officers, seeking, instead, to enhance their personal reputations and eventual promotability as crime busters.  In so doing, they conspired to deprive African-American drivers, including Mr. Wilson, of the equal protection of the law in violation of 42 U.S.C. §1985(3).

Count V

Defendant Nytes: Supervisory Liability Under 42 U.S.C. §1983

55.  By knowingly approving defendant Freitag's practice, custom or usage of using pretextual stops in order to make arrests based on after-acquired alleged evidence of crime, and thereafter supporting the victims' wrongful prosecution, and by providing a favorable recommendation of Officer Freitag to another law enforcement agency and failing to indicate known circumstance that should have negatively impacted Mr. Freitag's employment by said agency, defendant Nytes demonstrated not only actual knowledge of Officer Freitag's misconduct but deliberate indifference to its known and foreseeable consequences, including specifically the violation of Fourth Amendment rights of persons in or traveling through Fairfax County, including Mr. Wilson.  He is liable for these offenses under 42 U.S.C. §1983.

-20-

Count VI

Defendant Nytes: Violation of 42 U.S.C. § 1986

56.  By knowingly tolerating Officer Freitag's use of racial profiling for the purpose of identifying persons to be stopped on a pretextual basis, and having the power to prevent or aid in the prevention of same by proper and diligent action but failing to do so, defendant Nytes rendered himself jointly liable with Officer Freitag under 42 U.S.C. §1986 for Mr. Wilson's damages.

Count VII

Defendants Chandler, Berkey, Billeb and Rohrer: Violation of 42 U.S.C. §1986

57.  By knowingly failing to take steps sufficient to prevent foreseeable lengthy wrongful incarceration of persons, like Mr. Wilson, convicted on Officer Freitag's racial profiling and mendacious evidence, and having the power to prevent or aid in the prevention of same by proper and diligent action but failing to do so until months later, when Mr. Wilson was no longer wuithgin the jurisdiction of the sentencing court that could have freed him, defendants Chandler, Berkey, Billeb and Rohrer each separately suffered Mr. Wilson to remain wrongfully incarcerated for seventeen months following his leaving the jurisdiction of the Fairfax Circuit Court, in violation of 42 U.S.C. §1986.

Count VIII

Defendants Chandler, Berkey, Billeb and Rohrer: Due Process Violation

58.  By knowingly failing to take steps sufficient to prevent foreseeable lengthy wrongful

incarceration of persons, like Mr. Wilson, convicted on Officer Freitag's racial profiling and mendacious evidence, and having the power to prevent or aid in the prevention of same by proper and diligent action but failing to do so until months later, when Mr. Wilson was no longer wuithgin the jurisdiction of the sentencing court that could have freed him, defendants Chandler, Berkey, Billeb and Rohrer each separately suffered Mr. Wilson to remain wrongfully incarcerated for seventeen months following his leaving the jurisdiction of the Fairfax Circuit Court, in violation of the Due Process Clause of the Fourteenth Amendment.

## Count IX

### Fairfax County: *Monell* Claim for Unconstitutional Custom, Practice, or Usage

59.  By turning a deliberately indifferent blind eye to the actions of its police officers and their supervisors in making and approving pretextual stops for purposes of making arrests, and by facilitating prosecutions based on after-acquired alleged evidence of crime obtained in pretextual stops, and by undertaking to keep such infractions hidden even from other law enforcement agencies, all as set forth above, defendant Fairfax County engaged in a widespread, persistent pattern of unconstitutional misconduct by its own agency charged with enforcement of the law, amounting to a County practice, custom or usage of encouraging or at the minimum tolerating and justifying unconstitutional police stops, thereby leading to the victimization of Mr. Wilson and others similarly situated, in violation of their Fourth Amendment rights.

***

-22-

Wherefore, Mr. Wilson seeks the following relief:

*       an order permitting preliminary discovery from Fairfax County and from the

Fairfax Commonwealth's Attorney's Office sufficient to determine the actual or

potential size of the class sought to be represented herein, or sufficient to establish

insufficient numerosity to justify a class certification motion,

*       an award of compensatory damages in an amount appropriate to the proof at trial,

jointly and severally against all defendants,

*       awards of punitive damages against defendants Freitag, Nytes, Chandler, Berkey,

Billeb and Rohrer in amounts appropriate to the proof at trial,

*       an award of attorneys fees and costs; and

*       such other relief as the court deems just.

Mr. Wilson requests trial by jury.

                                        Respectfully submitted,

                                        ELON WILSON,

                                        By counsel

Dated:   August 26, 2021

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com
**WilsonElon\Pleadings\2021-0708-Complaint**

-23-

//s// Nickera S. Rodriguez
Nickera S. Rodriguez, #95952
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
nsr@robinhoodesq.com


//s// Marvin D. Miller
Marvin D. Miller, #1101
1203 Duke Street
Alexandria, VA 22314
703.548.5000 / Fax 703.739.0179
ofc@mdmillerlaw.com